## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **AORTENSE EVETTE LEWIS,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-13-2424** |
| | * | |
| **MARYLAND TRANSIT** | * | |
| **ADMINISTRATION,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM OPINION

Plaintiff Aortense Evette Lewis, who proceeds *pro se*, filed this case against her former employer, Defendant Maryland Transit Administration ("MTA"), on August 19, 2013, alleging employment discrimination, based on race and disability, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et. seq.* and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*[1]  Compl. [ECF No. 1].  The parties consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4.  [ECF Nos. 18, 21].  Currently pending before the Court are Defendant's Motion for Summary Judgment and its Motion for Leave to File Corrected Document.  [ECF Nos. 42, 44].  The Court has also considered Plaintiff's Opposition and Defendant's Reply.[2]  [ECF Nos. 55, 57].  For the reasons set forth below, Defendant's Motion for Leave to File Corrected Document

---

[1]  Ms. Lewis's complaint also alleged employment discrimination based on age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et. seq.*  Compl.  On June 6, 2014, the Court dismissed Ms. Lewis's claim under the ADEA, because the ADEA does not abrogate State sovereign immunity.  Mem. Order [ECF No. 12].  Accordingly, only her claims under Title VII and the Rehabilitation Act remain pending.

[2]  The Court will not, however, consider Plaintiff's untimely Supplement to her Opposition, which the Court returned to Plaintiff on June 30, 2015.  [ECF No. 56].  Prior to untimely filing her supplement, the Court granted Plaintiff five extensions.  [ECF Nos. 46, 49, 51, 52, 54].  The final extension informed Plaintiff that her opposition to Defendant's motion was due on June 17, 2015, and that no further extensions would be granted.  [ECF No. 54].  Accordingly, on July 9, 2015, the Court denied Plaintiff's motion to reconsider its Order noting the return of her Supplement.  [ECF No. 60].

is granted[3] and Defendant's Motion for Summary Judgment, construed as a motion to dismiss and/or for summary judgment, is also granted.[4]

## I.    BACKGROUND

Ms. Lewis is an African American woman.  MTA is one of nine statutorily created units within the Maryland Department of Transportation.  Md. Code Ann. Transp. § 2-107(a)(3).  Ms. Lewis began working as an administrative assistant in MTA's Systems Technology Department in September 2005.  Compl. Ex. 1, 5 [ECF No. 1–1]; Def.'s Mem. Ex. 1 ("Lewis Dep."), 30:17–21, 31:19–21 [ECF No. 42–3].  After spending approximately two and a half years in the Systems Technology Department, in May 2008, Ms. Lewis began working as an administrative assistant in MTA's Scheduling Department, which was subsequently renamed the Office of Service Development.  Lewis Dep. 33:7–35:2.  Ms. Lewis remained in that department for the duration of her employment at MTA, although her title was changed to "office coordinator/manager" approximately one year after she was transferred to the Office of Service Development.  Lewis Dep. 37:9–38:4.

Ms. Lewis initially worked at MTA through a temporary employment agency.  Lewis Dep. 29:3–30:21.  In April 2008, MTA informed the temporary employment agency that it would be hiring Ms. Lewis, effective May 7, 2008.  Def.'s Mem. Ex. A [ECF No. 42–10].  MTA hired Ms. Lewis as a temporary employee with an appointment term of one year, and on May 20, 2008 she signed an "acknowledgement of temporary employment status."  Lewis Dep. 36:6–9; Def.'s Mem. Ex. B [ECF No. 42–11].  On June 9, 2008, Ms. Lewis also signed an "acknowledgement of temporary appointment" letter, which indicated that her appointment was

---

[3] Defendant's motion was unopposed and contained no substantive changes.  Accordingly, Ms. Lewis will not suffer any prejudice as a result of the Court's consideration of the corrected document.

[4] Defendant's motion is styled as seeking only summary judgment.  However, because the relief requested therein includes dismissal of several of Ms. Lewis's claims for lack of subject matter jurisdiction, the Court will construe MTA's motion as a motion to dismiss and/or for summary judgment.

due to expire on May 6, 2009. Def.'s Mem. Ex. C [ECF No. 42–12]. Despite the fact that Ms. Lewis's temporary employment term was never renewed in a formal sense, she continued working at MTA through April 30, 2013. Def.'s Mem. Ex. 3 ("Burgos Aff."), ¶ 4 [ECF No. 12–6].

In the course of Ms. Lewis's employment at MTA, she was supervised by Director Jessica Keller from July 2010 to June 2012. Burgos Aff. ¶ 3; Lewis Dep. 52:18–20. In July 2010, Director Keller sought to have a vacant, permanent managerial position reclassified as an administrative position, so that Ms. Lewis could become a permanent State of Maryland employee. Def.'s Mem. Ex. 4 ("Patrick Keller Aff."), ¶ 5 [ECF No. 42–7]. However, due to budgetary constraints, Director Keller's reclassification request was denied. Patrick Keller Aff. ¶ 5. Director Keller informed Ms. Lewis that she would not be made a permanent employee on December 3, 2010. Def.'s Mem. Exs. G, H [ECF Nos. 42–16, 42–17].

In 2011, Patricia "Jane" Herbert began to work with MTA in the Office of Service Development. Def.'s Mem. Ex. 2 ("Okoro Aff."), ¶ 4 [ECF No. 42–5]. Ms. Herbert was an employee of Chesapeake Environmental Management Inc., a subcontractor on a larger MTA planning services contract held by another company. Okoro Aff. ¶ 4. Ms. Herbert performed "on-site technical analysis and information technology support" for the Office of Service Development's planning functions, "including the use of global information systems and other electronic mapping applications." Okoro Aff. ¶ 5. In order to facilitate Ms. Herbert's work with transit planners and analysts, MTA provided her with training on the Service Development Office's transportation management software, "trapeze," and in other areas. Okoro Aff. ¶ 6. Ms. Lewis testified that sometime in 2012, Ms. Herbert began performing certain duties that Ms. Lewis had previously performed—particularly, writing certain notices, bulletins, and E-

notifications that informed MTA employees and the public about the location of street detours. Lewis Dep. 188:20–191:6, 196:19–197:3.  Ms. Lewis also testified that Ms. Herbert received training for all of the duties of a transit analyst and for the accounting system.  Lewis Dep. 192:9–193:5.

In the course of her employment at MTA, Ms. Lewis sustained two injuries.  On April 11, 2011, Ms. Lewis slipped and fell while at work.  Lewis Dep. 109:5–6.  Ms. Lewis returned to work two days after her April 2011 injury, was on crutches for approximately one month, and was limited by her physician to: bending no more than four times per hour, no pushing or pulling over 10 pounds, no squatting or kneeling, and no climbing stairs or ladders.  Lewis Dep. 110:8–10, 119:17–120:8; Def.'s Mem. Ex. J [ECF No. 42–19].  On February 29, 2012, Ms. Lewis was a passenger in an automobile that was rear ended.  Following the February 2012 accident Ms. Lewis was released to return to work the next day, and was limited by her physician to: bending no more than six times per hour, no lifting over 10 pounds, no pushing or pulling over 20 pounds, and no squatting or kneeling.  Def.'s Mem. Ex. K [ECF No. 42–20].  Ms. Lewis testified that she presented the physical limitation forms completed by her physicians to her supervisor. Lewis Dep. 124:7–10, 157:14–158:5.

On July 12, 2012, Patrick Keller and Ivan Mitchell met with Ms. Lewis to discuss her attendance.  Patrick Keller Aff. ¶ 4.  Between January and June 2012, Ms. Lewis was frequently absent from work.  Def.'s Mem. Ex. L, at 2–12 [ECF No. 42–21].  At the meeting, Ms. Lewis was issued a written warning regarding her attendance.  Def.'s Mem. Ex. L, at 1.  The warning explained that Deputy Director Mitchell "anticipate[d] seeing an immediate improvement in [Ms. Lewis's attendance.  Otherwise further progressive disciplinary action may be taken."  Def.'s

4

Mem. Ex. L, at 1.  MTA took no further disciplinary action against Ms. Lewis after it issued the written warning.  Patrick Keller Aff. ¶  4.

On April 7, 2012, and August 2, 2012, Ms. Lewis filed internal complaints of discrimination with MTA.  Def.'s Mem. Ex. 5 ("Cullings Aff."), ¶ 3.  Her first complaint was related to hiring and promotion, and her second complaint was related to the attendance warning she received on July 12, 2012.  Cullings Aff. ¶ 3.  MTA's Office of Fair Practices investigated both of Ms. Lewis's internal complaints and found no probable cause for discrimination. Cullings Aff. ¶ 3.  On August 7, 2012, Ms. Lewis submitted an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC").  Def.'s Mem. Ex. S [ECF No. 42–28]. Thereafter, she filed an administrative charge of discrimination with the EEOC on September 20, 2012.  Def.'s Mem. Ex. T [ECF No. 42–29].  Ms. Lewis's EEOC charge alleged that on July 12, 2012, she was subject to discriminatory treatment based on race, age, and disability and retaliated against for her complaints of discrimination.   Def.'s Mem. Ex. T.

Around the same time that she initiated contact with the EEOC, Ms. Lewis verbally requested a personal printer at her desk to accommodate her difficulties in walking to and from the office printer and in servicing the office printer.  Lewis Dep. 158:14–160:14.  However, Director Keller denied her request due to budgetary restrictions.   Lewis Dep. 158:19–159–1. Thereafter, on October 10, 2012, Ms. Lewis submitted a reasonable accommodation request to the Office of Human Resources Medical Services Division, complaining of a lumbar strain and contusion in her bilateral knees and asking that a printer be installed at her desk so she would not have to walk to the office printer.  Def.'s Mem. Ex. M [ECF No. 42–22].  In support of her request, Ms. Lewis submitted three documents: (1) the treatment note from her physician setting forth the limitations from her April 2011 fall; (2) a questionnaire completed in March of 2012

pertaining to Ms. Lewis's eligibility for paratransit services, stating limitations of chronic back pain, impaired gait, and limited walking, and indicating that Ms. Lewis's limitations were expected to last for three months; and (3) family medical leave act request form dated July 20, 2012, indicating that Ms. Lewis would miss one to two days of work per month and that she was unable to perform certain of her job functions due to her condition, but the explanation concerning which functions is largely illegible.  Burgos Aff. ¶ 7; Def.'s Mem. Exs. J, N, O [ECF Nos. 42–19, 42–23, 42–24].    Through a letter dated October 17, 2012, MTA informed Ms. Lewis that the State Medical Director determined that she did not have a condition that met the definition of disability under the Americans with Disabilities Act, and that her reasonable accommodation request was thus denied.  Def.'s Mem. Ex. P [ECF No. 42–25].  The notice also informed Ms. Lewis that she could appeal the determination internally with the MTA and externally with the EEOC.  Def.'s Mem. Ex. P.  Ms. Lewis took no action to appeal the request. Burgos Aff. ¶ 8.

As noted above, although Ms. Lewis's temporary employment agreement was never renewed, she continued to work at MTA long after her term of temporary employment technically expired on May 6, 2009.  According to MTA Director of Human Resources Robin Burgos, in 2013 MTA reviewed the status of its current employees in an effort "to ensure proper legislative authorization existed to support continued employment."  Burgos Aff. ¶ 9.  As a result of that effort, MTA discovered that many temporary employees' employment had continued past the expiration date of their appointment.  Burgos Aff. ¶ 9.  Accordingly, MTA terminated 35 temporary employees in the spring of 2013, including Ms. Lewis, whose termination was effective April 30, 2013.  Burgos Aff. ¶¶ 9–10; Def.'s Mot. Ex. Q [ECF No. 42–26].

Shortly after Ms. Lewis was terminated, on May 21, 2013, the EEOC issued a right to sue letter to Ms. Lewis.  Compl. Ex. 4 [ECF No. 1–4].  On August 13, 2013, Ms. Lewis initiated this action, alleging discrimination based on race and disability, and retaliation, in violation of Title VII and the Rehabilitation Act.  Compl. at 1–2.    Ms. Lewis's complaint alleged that MTA violated Title VII and the Rehabilitation Act by (1) failing to promote her; (2) demoting her; (3) denying her training; (4) writing her up for poor attendance; (5) denying her request for accommodation; and (6) terminating her employment.  Compl. at 2.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3). Federal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies.  *Balas v. Huntington*, 711 F.3d 401, 406 (4th Cir. 2013).  Thus, when a plaintiff has failed to exhaust administrative remedies before bringing a claim, the action should be dismissed under Rule 12(b)(1).  *See Khoury v. Meserve*, 268 F.Supp. 2d 600, 606 (D. Md. 2003), *aff'd* 85 F. App'x 960 (4th Cir. 2004).  In determining whether subject matter jurisdiction exists, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue."  *Id.* (internal quotation marks and citation omitted).  A plaintiff carries the burden of establishing subject matter jurisdiction.  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing *Thomas v. Gaskill*, 315 U.S. 442, 446 (1942)).  However, a *pro se* litigant's complaint should not be dismissed unless it appears beyond doubt that the litigant can prove no set of facts in support of her claim that would entitle her to relief.  *Gordon v. Eeeke*, 574 F.2d 1147, 1151 (4th Cir. 1987).  Courts are instructed that *pro se* filings "however unskillfully pleaded, must be liberally

construed." *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

###       B.       Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the facts and the inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the burden of demonstrating the absence of any genuine dispute of material fact. *Pulliam Invest. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). A moving party who will not bear the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting the burden of raising a genuine dispute of fact by substantial evidence to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The defendant in an employment discrimination case can obtain summary judgment in one of two ways: (1) by demonstrating "that the plaintiff's proffered evidence fails to establish a prima facie case," or (2) if it does, by "presenting evidence that provides a legitimate nondiscriminatory explanation about which the plaintiff does not create a factual dispute." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## III.    ANALYSIS

In its Motion for Summary Judgment, MTA contends that Ms. Lewis's claims that she was denied a promotion, demoted, and denied training, should be dismissed due to her failure to exhaust administrative remedies, and that summary judgment should be granted in its favor with

respect to Ms. Lewis's claims based on the poor attendance warning, the denial of her request for reasonable accommodation, and her termination.

### A.     Dismissal: Failure to Exhaust Administrative Remedies

#### 1.     Timeliness of Ms. Lewis's EEOC charge

MTA first argues that Ms. Lewis's EEOC charge was not timely filed within 180 days of the occurrence of the denial of the promotion, the demotion, and the denial of training, in violation of the governing limitations period. [5]  Def.'s Mem. 17-18.  *See* 42 U.S.C. § 2000e-5(a)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred."); 29 U.S.C. § 794a(a)(1) (extending the "remedies, procedures, and rights" set forth in Title VII to any person aggrieved under the Rehabilitation Act).   Accordingly, MTA contends that Ms. Lewis failed to exhaust her administrative remedies with respect to those acts.

First, MTA argues that the basis for Ms. Lewis's denial of promotion claim—its decision not to convert Ms. Lewis's temporary position to a permanent State of Maryland position, of which Ms. Lewis was made aware on December 3, 2010—occurred more than 180 days before the September 20, 2012 filing of her EEOC charge.  For the purpose of determining whether the limitations period has been satisfied, the Supreme Court has explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  MTA's decision not to convert Ms. Lewis's position to a permanent State position was a discrete act that occurred more than 180 days before she filed the EEOC charge, and her claims arising from that act are

---

[5] There is no evidence that Ms. Lewis filed a charge with a State agency, and her claims are thus governed by the 180 day limitation period.

thus time-barred. Accordingly, Ms. Lewis's claim based on MTA's decision not to convert her position to a permanent State position is dismissed for lack of subject matter jurisdiction.

MTA also argues that the basis for Ms. Lewis's demotion and denial of training claims—MTA's acts related to Patricia Herbert—also occurred more than 180 days prior to the September 20, 2012 filing of her EEOC charge because Patricia Herbert started working with MTA in June 2011. The date Ms. Herbert began working with MTA is not, however, the appropriate date from which to determine whether MTA's acts related to Ms. Herbert are time-barred. Rather, the inquiry properly turns on the particular date of each instance that Ms. Lewis alleges that Ms. Herbert received job training, and each instance that Ms. Lewis alleges her job duties were assigned to or performed by Ms. Herbert. The dates on which Ms. Herbert attended trainings are unclear from the record. However, Ms. Lewis did testify that Ms. Herbert's performance of her job duties occurred sometime in 2012. Lewis Dep. 194:1–197:18. Because it is plausible that some of MTA's acts related to Ms. Herbert occurred within 180 days of September 20, 2012, the Court cannot determine that Ms. Lewis's claims that she was demoted and denied training are time-barred.

### 2.    Scope of Ms. Lewis's EEOC Charge

MTA next argues that Ms. Lewis has failed to exhaust her administrative remedies to the extent that her claims that she was demoted and denied training are based on adverse employment actions not explicitly described in her EEOC charge. The Fourth Circuit has held that a court's inquiry in a Title VII case is procedurally limited in scope to the allegations contained in the EEOC charge and any charges that would naturally have arisen from an investigation thereof. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Ms. Lewis's EEOC charge alleged (1) that she was denied "a promotion to become a permanent MTA employee," and (2) that she was subjected to discriminatory disciplinary actions, including

10

a July 12, 2012 reprimand for poor attendance, in retaliation for her filing of internal complaints concerning the denial of her promotion. Def.'s Mem. Ex. T, at 1. It also stated that Ms. Lewis was "treated less favorably than other similarly situated employees, and subjected to a different set of terms and conditions of employment." Def.'s Mem. Ex. T, at 1. By contrast, Ms. Lewis's complaint before this court alleged that she was demoted in her job duties and denied certain training. Compl. at 2. The only facts that potentially support the claims in Ms. Lewis's complaint are those concerning MTA's acts related to Ms. Herbert.

Construing Ms. Lewis's EEOC charge liberally, Ms. Lewis's claims that she was demoted and denied training do not bear a sufficient nexus to the allegations set forth in her EEOC charge to support a conclusion that she exhausted her administrative remedies for those claims. Even if the EEOC charge supports claims based on disciplinary acts other than those specifically described therein, the fact that MTA provided Ms. Herbert with training that was not provided to Ms. Lewis cannot reasonably be viewed as disciplinary. *See Dennis v. County of Fairfax*, 55 F.3d 151, 153, 156 (4th Cir. 1995) (various discriminatory actions, including those related to training, exceeded scope of EEOC charge alleging disparate disciplinary treatment). Likewise, absent additional evidence concerning MTA's motive, the fact that MTA may have transferred a single job duty from Ms. Lewis to Ms. Herbert cannot reasonably be viewed as disciplinary. Moreover, Ms. Lewis's EEOC charge did not claim that she was demoted, did not claim that she was denied training, did not mention Ms. Herbert, and did not put MTA on notice that her claims of discrimination and retaliation were based on MTA's actions toward Ms. Herbert. *See Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals."); *Chacko*, 429 F.3d at 510 ("Congress enacted Title VII's exhaustion

requirement . . . to serve the primary purposes of notice and conciliation."). Ms. Lewis's general allegation in her EEOC charge of "less favorable" treatment is simply too vague to support her claims that she was demoted and denied training. *See Chacko*, 429 F.3d at 508 (explaining that an EEOC charge is adequate "only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'") (quoting 29 C.F.R. § 1601.12(b)). Finally, the Court notes that in her EEOC intake questionnaire, which Ms. Lewis attached to her complaint, she listed Patricia Herbert as a similarly situated person who received better treatment. Compl. Ex. 1 at 2. However, Ms. Lewis's ambiguous intake questionnaire cannot cure the deficient scope of her EEOC charge,[6] as the Fourth Circuit has made clear that in construing the scope of claims in an EEOC charge, courts are not permitted to consider the allegations in a claimant's EEOC intake questionnaire. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). For the foregoing reasons, Ms. Lewis's claims that she was demoted and denied training based on MTA's treatment of Ms. Herbert exceed the scope of Ms. Lewis's EEOC charge, and are dismissed for lack of subject matter jurisdiction.

### B.   Summary Judgment

MTA argues that it is entitled to summary judgment on Ms. Lewis's remaining claims because she has failed to establish a prima facie case of discrimination or retaliation, and because she has not rebutted MTA's legitimate, non-discriminatory reasons for its actions. Ms. Lewis has not presented direct or circumstantial evidence of a violation of Title VII or the Rehabilitation Act. *See Holland v. Washington Homes Inc.*, 487 F.3d 208, 213–14  (4th Cir. 2007) ("[A] plaintiff may establish a claim of race discrimination by demonstrating through

---

[6] Ms. Lewis's intake questionnaire did not allege that she had been demoted, nor did the explanation she offered about Ms. Herbert state that MTA had assigned Ms. Lewis's job duties to Ms. Herbert. Compl. Ex. 1.  It was not until questioning at her deposition that Ms. Lewis elaborated that certain of her job duties pertaining to detour notices were reassigned to Ms. Herbert, and that she believed Ms. Herbert was given training opportunities to which she was not entitled.  Lewis Dep. 188:20–191:6, 192:9–193:5, 196:19–197:3.

direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action."). Under the *McDonnell Douglas* burden shifting framework, the propriety of summary judgment thus turns on whether Ms. Lewis has established a prima facie case of a violation of Title VII or the Rehabilitation Act that raises an inference of illegal conduct. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Ms. Lewis establishes a prima facie case of discrimination under Title VII, or retaliation under Title VII or the Rehabilitation act, the burden shifts to MTA to rebut the case with a legitimate, lawful reason for its actions. *Holland*, 487 F.3d at 213–14; *Foster v. Univ. of Maryland*, 787 F.3d 243, (4th Cir. 2015) (applying the *McDonnell Douglas* framework to a retaliation claim where a plaintiff had not presented direct evidence of retaliation). If Ms. Lewis establishes a prima facie case of discrimination under the Rehabilitation Act, MTA may nevertheless avoid liability if it can show "as a matter of law that the proposed accommodation will cause undue hardship in the particular circumstances." *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407 (4th Cir. 2015) (internal quotation marks and citation omitted). If MTA successfully rebuts Ms. Lewis's prima facie case, Ms. Lewis must then establish that MTA's proffered explanation is not its true reason, but is instead pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

### 1.    Discrimination—Title VII

Ms. Lewis's EEOC charge alleges discrimination based on race in violation of Title VII. In support of her claim, Ms. Lewis cited the poor attendance warning MTA issued to her on July 12, 2012. Def.'s Mem. Ex. L. After Ms. Lewis filed her EEOC charge, MTA terminated Ms. Lewis's employment on April 30, 2013. Def.'s Mem. Ex. Q. The Court will also consider whether her termination was discriminatory. *See Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992).

To demonstrate a prima facie case of discrimination for the attendance warning, Ms. Lewis must show: (1) that she is a member of a protected class; (2) that she was qualified for her job and that her job performance was satisfactory; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly situated employees outside of her protected class. *Frank v. England*, 313 F. Supp. 2d 532, 538 (D. Md. 2004) (citing *McDonnell Douglas*, 411 U.S. 792, 802 (1973)). MTA does not contest Ms. Lewis's status as a member of a protected class based on her race. However, MTA claims that summary judgment in its favor is appropriate because: (1) the attendance warning was not an adverse employment action; and (2) Ms. Lewis has not proffered any evidence indicating that she was treated differently than similarly situated employees outside of her protected class.

An adverse employment action is "a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland*, 487 F.3d at 219 (internal quotation marks and citation omitted). For actions other than termination, adverse employment actions typically take the form of a decrease in compensation, demotion, or loss of an opportunity for promotion. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004). Ms. Lewis has not presented any evidence that her attendance warning was paired with a decrease in compensation, demotion, loss of an opportunity for promotion, or some other consequence similarly material in nature. Accordingly, the attendance warning she received cannot support a claim for discrimination.

Moreover, Ms. Lewis has not offered any evidence that she was treated differently than similarly situated employees outside of her protected class. The only "similarly situated" employee who Ms. Lewis alleges received better treatment is Ms. Herbert. However, Ms. Herbert was not an employee of MTA—permanent or temporary—and her position was not

14

administrative or clerical in nature. *See* Lewis Dep. 199:1–14.  Ms. Herbert was thus not similarly situated to Ms. Lewis.  Moreover, in considering whether Ms. Herbert and Ms. Lewis were similarly situated in the particular context of the attendance warning, Ms. Lewis has not offered evidence concerning the attendance records of Ms. Herbert or, for that matter, any other MTA employee. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) ("[P]laintiffs are required to show that they are similar in all relevant respects to their comparator . . . Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); (internal citation omitted)).  Accordingly, the Court cannot determine that any other employees engaged in comparable absenteeism without receiving attendance warnings.  Finally, even if Ms. Lewis had demonstrated a prima facie case of discrimination, under the *McDonnell Douglas* burden shifting framework, MTA has offered a legitimate business reason for issuing the attendance warning:  Ms. Lewis's recurring absences.  Thus, to survive summary judgment, Ms. Lewis would bear the burden to prove that MTA's proffered reason is merely pretext, a burden she has not met. Accordingly, Ms. Lewis's claim of discrimination under Title VII based on the attendance warning cannot withstand MTA's motion for summary judgment.

To demonstrate a prima facie case of discriminatory discharge based on her termination, Ms. Lewis must show: (1) that she is a member of a protected class; (2) that she was qualified for her job and her performance was satisfactory; (3) in spite of her qualifications and performance, she was discharged; and (4) following her discharge, her position remained open to or was filled by similarly qualified applicants outside her protected class. *Holland*, 487 F.3d at 214; *Causey v.*

*Balog*, 162 F.3d 795, 802 (4th Cir. 1998). Although Ms. Lewis has arguably satisfied the first three elements,[7] she has not offered any evidence concerning whether her position remained open or was filled by a similarly qualified applicant outside her protected class. Absent such evidence, the Court cannot find that she has demonstrated a prima facie case of discriminatory discharge. Ms. Lewis testified at her deposition that she has not applied for any MTA positions since she was terminated, because she is not qualified to do most of the work they have available. Accordingly, the only evidence on the issue indicates that MTA did not open her position to similarly qualified applicants.

However, even if Ms. Lewis had estaablished a prima facie case of discriminatory discharge, under the *McDonnell Douglas* burden shifting framework, MTA has satisfied its burden of production by offering a legitimate business reason for terminating Ms. Lewis. MTA presented affidavits asserting that it terminated Ms. Lewis because she was a temporary employee whose appointment had long since expired. The legitimacy of MTA's business reason is bolstered by the fact that MTA simultaneously terminated 34 other employees with expired terms of temporary employment. Ms. Lewis has not demonstrated that MTA's proffered reason is merely pretext for discrimination. Accordingly, MTA is also entitled to summary judgment as to Ms. Lewis's discriminatory discharge claim under Title VII.

### 2.    Discrimination—Rehabilitation Act

Ms. Lewis's EEOC charge also alleges discrimination based on disability in violation of the Rehabilitation Act. MTA declined to provide Ms. Lewis with a personal printer upon her reasonable accommodation request in October 2012. Under the Rehabilitation Act, an employer must accommodate an employee with a disability who can perform the essential functions of a

---

[7] The Court will assume that Ms. Lewis's qualifications and performance were satisfactory, since the only indication otherwise is the attendance warning she received, and since there is no evidence that her attendance problem persisted subsequent to the warning.

job with reasonable accommodation.  To establish a prima facie case for failure to accommodate, Ms. Lewis must show:  (1) that she was an individual with a disability under the meaning of the Rehabilitation Act; (2) that MTA had notice of her disability; (3) that with a reasonable accommodation, she could perform the essential functions of her position; and (4) that MTA refused to make such an accommodation.  *See Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407 (4th Cir. 2015).  MTA argues that Ms. Lewis does not satisfy any of the elements necessary to establish a prima facie case.

First, MTA argues that Ms. Lewis is not an individual with a disability.   The Rehabilitation Act defines disability as:  "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1).  Although walking is certainly a "major life activity" under 42 U.S.C. § 12102, the evidence and Ms. Lewis's testimony cannot support a finding that her impairments substantially limited her ability to walk.  The only form Ms. Lewis submitted in support of her request for accommodation indicating that she had a limited ability to walk was completed in March 2012, and it indicated that the limitations set forth therein would last for three months.  Accordingly, Ms. Lewis submitted no evidence which could reasonably support a finding that her ability to walk remained limited in October 2012, when she filed her request for accommodation.  The functional limitations set forth in the treatment note pertaining to Ms. Lewis's April 2011 fall also pertain to "major life activities."  42 U.S.C. § 12102(2)(A).  That treatment note does not specify the duration of the limitations it set forth.  Def.'s Mem. Ex. J.  Therefore, because the definition of disability should be "construed in favor of broad coverage of individuals under this

chapter," the Court will assume that the April 2011 treatment note satisfies the disability element and that Ms. Lewis's request itself satisfies the notice element. 42 U.S.C. § 12102(4)(A).

Even if Ms. Lewis is an individual with a disability under the Rehabilitation Act, however, she has not shown that with a reasonable accommodation, she could perform the essential functions of her position.  Rather, the evidence demonstrates that Ms. Lewis could perform the essential functions of her position without the accommodation she requested, such that the accommodation cannot be viewed as "reasonable" under the circumstances.  Ms. Lewis testified that her primary duties included ordering supplies, controlling access to the office, billing, handling credit card statements, and answering the telephone and correspondence.  Lewis Dep. 49:20–50:5, 66:6–15.  As noted above, the evidence Ms. Lewis presented in support of her request for accommodation does not indicate a limitation in her ability to walk at the time she submitted her request. Rather, the evidence arguably supports that she suffered from the limitations in the April 2011 treatment note—bending, pushing and pulling, squatting and kneeling, and climbing stairs and ladders.  Those limitations would not preclude Ms. Lewis from making trips to and from the main office printer, or from performing any other of the essential functions of her position.

Ms. Lewis also described difficulties fixing the main office printer when it was malfunctioning, which apparently involved climbing a small stepstool, and unloading paper, which involved bending.  Lewis Dep. 128:17–20.  Ms. Lewis felt like it was her duty to fix the printer when it was broken because she was "the office person."  Lewis Dep. 125:12.  However, it is by no means clear from the evidence that Ms. Lewis's duties actually included fixing the printer or unloading paper.  Ms. Lewis testified that when she was placed under restrictions, she did not do any lifting, climbing or anything else that she was instructed not to do, and that she

was never disciplined for failing to perform her duties, which undermines her claim that those activities were among the essential functions of her position. Lewis Dep. 128:3–5, 157:11–21. However, even if the essential functions of Ms. Lewis's position did include fixing the main office printer when it was malfunctioning and unloading paper, the installation of a personal printer at her desk would not have helped her to perform those functions. *See Dones v. Donahoe*, 987 F.Supp. 2d 659, 669 (D. Md. 2013) ("In order to be reasonable, the accommodation must be effective (i.e., it must address the job-related difficulties presented by the employee's disability)." (citation and quotation marks omitted)).   Accordingly, Ms. Lewis has not established that a personal printer at her desk was a reasonable accommodation that would help her perform the essential functions of her position, and her discrimination claim under the Rehabilitation Act cannot withstand MTA's Motion for Summary Judgment.

### 3.    Retaliation—Title VII and Rehabilitation Act

Finally, Ms. Lewis claims that the attendance warning, the denial of her request for accommodation, and her termination were retaliatory in violation of Title VII and the Rehabilitation Act.  To demonstrate a prima facie case of retaliation under both Title VII and the Rehabilitation Act, Ms. Lewis must show:  (1) that she "engaged in protected activity, such as filing a complaint with the EEOC"; (2) that MTA "acted adversely against" her; and (3) that the protected activity was "causally connected" to MTA's adverse action.   *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011); *Dones*, 987 F.Supp. 2d at 671.

In this case, there is no dispute that Ms. Lewis engaged in protected activity by filing two internal MTA complaints and an EEOC charge, or that MTA acted adversely against her by denying her request for accommodation and terminating her employment.   Although the attendance warning did not constitute an adverse employment action that could support Ms. Lewis's discrimination claim, a plaintiff need not establish an ultimate employment decision to

19

make out his prima facie case of retaliation; rather, he must show only that the action would be seen as materially adverse through the eyes of a reasonable employee. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006). Although it is unlikely that the attendance warning meets even the lower standard for adverse employment actions that may support a retaliation claim, the Court will accord Ms. Lewis the benefit of the doubt and assume that a reasonable employee could have viewed the attendance warning as materially adverse. *See Muldrow v. Blank*, No. PWG–13–1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014) (noting that an attendance warning does not qualify as "an adverse employment action in a retaliation claim" (quoting *Rock v. McHugh*, 819 F. Supp. 2d 456, 470–71 (D. Md. 2011)).

Whether Ms. Lewis has established causation at the prima facie case stage is "less onerous" than at the pretext stage of the *McDonnell Douglas* framework. *Foster*, 787 F.3d at 251. In evaluating causation at the prima facie case stage of the retaliation analysis, courts often consider: (1) whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and (2) the temporal proximity between the protected activity and the allegedly retaliatory act. *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (holding that a plaintiff had not established a prima facie case of retaliation where he had not shown that the allegedly retaliatory actors were aware of his protected activity); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). First, there is no evidence that the MTA officials who engaged in the alleged retaliatory acts were aware, at the time of the acts, that Ms. Lewis had engaged in protected activity. The attendance warning was issued by Patrick

Keller and Ivan Mitchell, both of whom worked in the MTA Service Department. Keller Aff. ¶¶ 2, 4. The accommodation request determination was made by MTA's Office of Medical Services, and the termination decision was made by MTA's Human Resources Department. Burgos Aff ¶¶ 7–9. By contrast, Ms. Lewis's internal complaints of discrimination were filed with MTA's Office of Fair Practices. Cullings Aff. ¶ 3. Ms. Lewis has not alleged the Office of Fair Practices has any overlap in personnel with the allegedly retaliatory actors, or that the Office of Fair Practices disclosed Ms. Lewis's complaints to any of those actors. Likewise, the record is void of any evidence concerning when MTA became aware of Ms. Lewis's EEOC charge or who was informed of the charge. Accordingly, no reasonable finder of fact could conclude that the actors were aware that Ms. Lewis had engaged in protected activity at the time of the allegedly retaliatory acts.

In order for temporal proximity alone to satisfy the causation prong of the prima facie case, the temporal proximity must be very close. *See Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 707 (D. Md. 2003) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). In this case, Ms. Lewis's protected activities occurred between April and September 2012. MTA issued the attendance warning in June 2012, denied Ms. Lewis's request for accommodation in October 2012, and terminated Ms. Lewis's employment in May 2013. Accordingly, Ms. Lewis's protected activities occurred closely enough in time to the June 2012 attendance warning and the October 2012 denial of her accommodation request, such that, when viewed in the light most favorable to Ms. Lewis, the temporal proximity of the events arguably support an inference of causation that would establish a prima facie case of retaliation. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). By contrast, the temporal proximity between Ms. Lewis's protected

activity and her termination is insufficient to support an inference of causation that would establish a prima facie case.  *See Hooven–Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001).

However, even if the temporal proximity, standing alone, is sufficient to establish a prima facie case of retaliation for the attendance warning and the accommodation request denial, MTA has satisfied its burden of providing legitimate business reasons for its allegedly retaliatory acts. With respect to the attendance warning, MTA has provided attendance sheets that document Ms. Lewis's regular absences over the six month period preceding the warning.  Likewise, with respect to its denial of her accommodation request, MTA has pointed to ample evidence that Ms. Lewis was able to adequately perform the requirements of her position without a personal printer.  Finally, even if Ms. Lewis had established a prima facie case of retaliation for her termination, as discussed above, MTA has also proffered a legitimate business reason for that act.

Because MTA has proffered legitimate business reasons for its acts, under the *McDonnell Douglas* framework, Ms. Lewis bears the burden of proving that MTA's proffered reasons are pretextual, and that its actual reasons for terminating her were retaliatory.  *Foster*, 787 F.3d at 252.  At the pretext stage of the *McDonnell Douglas* retaliation analysis, Ms. Lewis must prove that but-for its retaliatory motive, MTA would not have taken adverse employment actions against her.  *Id.*  Although Ms. Lewis has generally asserted that MTA's actions were retaliatory, she has put forth no specific facts in support of her assertions.  Moreover, there is no actual evidence on the record to suggest that MTA's actions were based even in part on the fact that Ms. Lewis engaged in protected activity.  Viewing all of the evidence in the light most favorable to Ms. Lewis, she simply cannot establish that, but-for MTA's retaliatory motives, MTA would not have issued the attendance warning, denied her request for accommodation, or terminated

her.  Accordingly, Ms. Lewis's retaliation claims cannot withstand MTA's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, construed as a motion to dismiss and/or for summary judgment is GRANTED.  A separate order follows.

Dated:  August 19, 2015          /s/

Stephanie A. Gallagher
United States Magistrate Judge